ESTATE OF Charles A. BROOKS, Deceased; Peoples First National Bank and Trust Company and A. W. Robertson, Executors, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12221.

United States Court of Appeals Third Circuit.

Argued Nov. 21, 1957.

Decided Jan. 9, 1958.

Mahlon E. Lewis, Pittsburgh, Pa. (Lewis & Drew, Pittsburgh, Pa., on the brief), for petitioners.

Helen A. Buckley, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves federal estate tax upon the estate of Charles A. Brooks. The Tax Court decided the case against the taxpayer, executors of the decedent, and they appeal to this Court under § 7482 of the Internal Revenue Code of 1954, 26 U.S.C. § 7482.

The case is an interesting and novel problem under the rather general language of § 812(d) of the Internal Revenue Code of 1939, 26 U.S.C. § 812(d) and has to do with the amount which is to be included in the net estate subject to taxation. That section provides that the net estate is to be determined by deducting from the value of the gross estate the amount of legacies "to or for the use of any corporation organized and operated exclusively for religious, charitable * * * purposes * * *."

Colonel Charles A. Brooks, who died in 1950, left a will which provided for two trusts. One called "Trust A," a marital deduction trust, was left to his wife.[1] The testator provided for another

1. The words used were:

"One Million Two Hundred Thousand Dollars ($1,200,000) to be held, managed, invested and reinvested for the benefit of my wife, Anna Cloyde Brooks, and the Trustees shall pay the full net income thereof annually in convenient installments to her for and during the term of her natural life. My said wife during her lifetime shall have full pow-

trust called "Trust B." This was to consist of the remaining portion of the residue, the income therefrom to be distributed to certain named charities. None of these charities is exempt from the Pennsylvania inheritance tax law, and in fact this tax was paid on the amounts transferred for their benefit under Trust B. Then the testator added another clause which is highly important in the question involved in this case. He provided that all estate, legacy, inheritance and succession taxes payable by reason of his death were to be paid from Trust B and that "no such taxes or any part thereof shall be paid by any other person whomsoever by way of reimbursement, apportionment, proration or otherwise."

The question in this case is whether in determining the charitable deduction the amount in Trust B is to be diminished by a contingent liability which the estate has for Pennsylvania inheritance taxes. Put another way the question is how much are the charities deemed to get? That they actually get and will retain something is clear and not contested. In fact they have already received the full amount and are enjoying the benefits thereof. This makes the case different from all of those cited to us by both sides in brief and argument.[2] But there is a possibility that Pennsylvania will collect additional inheritance taxes from that fund on the amount in Trust A at the death of Mrs. Brooks. If such a tax is to be collected it will be at the rate of ten per cent, credit being given for the two per cent already paid. Purdon's Pa.Stat.Ann. tit. 72, §§ 2302, 2303c. Although state inheritance taxes are

ordinarily allowed as a credit against the federal estate tax, this privilege is limited to amounts paid within a four-year period. Internal Revenue Code of 1939, § 813(b), 26 U.S.C. § 813(b). In this respect the Pennsylvania statute is unique in that transfers of future assets are taxed when the remainder comes into actual possession. Purdon's Pa.Stat.Ann. tit. 72, § 2304. This event may not come to pass, as in this case, until after the period allowed by the statute. Therefore, the Commissioner contends that part of Trust B which in the future may be used to pay this tax if it should accrue is includible in the net taxable estate. The taxpayer in turn says that the probability of payment of the tax to Pennsylvania upon the death of Mrs. Brooks is so "remote, contingent and improbable" that the amount must not be used by the Commissioner to reduce the claimed charitable bequest to Trust B.

From the language of the will which created Trust A (set out above) it will be seen that Mrs. Brooks during her lifetime was entitled to withdraw the entire corpus of Trust A. If she were to exercise this right, of course, no additional state taxes would attach to the Colonel's estate. It is also in the facts, however, that Mrs. Brooks is a woman of means and that those means are sufficient to sustain her in her way of life without drawing upon the income or corpus of the trust. In addition, Colonel Brooks' will gives the widow the power to appoint the corpus of Trust A by her own will. Property transferred thereby would be taxed under Pennsylvania law as part of the estate of the

er to withdraw principal from the trust upon reasonable notice to the Trustees of her intention to do so. On the death of my said wife the trust estate shall go and be distributed in such manner as she by her Last Will and Testament may appoint and in default of such appointment shall go and be distributed in the same manner as the other portion of my residuary estate referred to in sub-paragraph (b) immediately following."

2. E. g., Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Merchants Nat. Bank v. Commissioner, 1943, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35; Commissioner of Internal Revenue v. Estate of Sternberger, 1954, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246; Seubert v. Shaughnessy, 2 Cir., 1956, 233 F.2d 134; Pennsylvania Co. for Insurances, etc. v. Brown, D.C.E.D.Pa.1933, 6 F.Supp. 582, affirmed 3 Cir., 1934, 70 F.2d 269.

donor. Purdon's Pa.Stat.Ann. tit. 72, § 2301. It is stipulated by the parties, moreover, that there are no direct descendants so that any appointment Mrs. Brooks makes, except to totally exempt charitable or educational institutions, will be subject to the ten per cent collateral inheritance tax. Furthermore, under the Pennsylvania law the institutions which are exempt from the inheritance tax are very limited. Purdon's Pa.Stat.Ann. tit. 72, § 2483. Indeed, it was in evidence that there is only one enterprise which now qualifies for the tax-free exemption and that is the Western Pennsylvania Historical Society. The record is silent as to whether Mrs. Brooks was interested in this society at the time the will of her husband became effective. If Mrs. Brooks does not otherwise dispose of Trust A, the corpus goes to Trust B.

The appellants put very ably the problem as they see it. They tell us that: "This Court must determine whether any such tax will ever become payable, and whether, if one does become payable, in what amount. It is submitted that this requires this Court to rest too wholly and to be entirely too dependent upon sheer conjecture if the Court affirms the decision of the Tax Court." With due respect to the ability of the learned counsel for the appellants, we do not think this is the way which the court must approach the problem. What is here being claimed is an exemption from taxation of a certain part of this estate. The previous cases teach that if there is a possibility that not all of the claimed deduction will eventually go to charity, " * * * the taxpayer has the burden of establishing that the amounts which will * * * reach the charity are thus accurately calculable." Merchants Nat. Bank v. Commissioner, 1943, 320 U.S. 256, 261, 64 S.Ct. 108, 111, 88 L.Ed. 35. We can see no difference when, as here, the assets orginally vest in the charity, but are subject to be taken back for nondeductible purposes. In either case the funds may not end up being applied to a use of the type Congress has singled out for this favorable treatment.

Furthermore, we look at this problem as of the day the will became effective, that is, either the date of the death of Colonel Brooks or the one year thereafter allowed for federal estate tax calculations. Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647; Seubert v. Shaughnessy, 2d Cir., 1956, 233 F.2d 134. It is argued that Mrs. Brooks will be advised to appoint the corpus of Trust A in such a way that additional inheritance tax will be avoided. We have no way of knowing, nor have appellants, whether such advice will be followed. Every lawyer knows that clients sometimes have their own notion of what they want to do and it is even possible that Mrs. Brooks may think that the State of Pennsylvania is as worthy an object of a portion of the estate as the Western Pennsylvania Historical Society. She may withdraw the corpus of the trust. But the appellants cannot assure us, as of the time here relevant, that this will be done. In other words, we have a situation where at the critical dates no one could tell for a certainty or even with reasonable probability what the course of devolution of the corpus of Trust A would be. In that situation it seems to us that the Tax Court was right in refusing to consider as done that which the appellants say will be done

The taxpayer makes considerable argument about the possibility that Mrs. Brooks could get an assessment of this tax ahead of time and pay it or make provision for paying it herself upon her death. The government's answer to that is correct. Such payments are irrelevant because of the very firm language which Colonel Brooks used in that clause of his will which is quoted above. Trust B was to bear the burden of the tax. We do not see how a testator's language on this point can be clearer than that which was incorporated in the testator's will.

We think that U.S.Treas.Reg. 105, § 81.44 has language which helps as a makeweight here although we do not rely upon it as the foundation for the decision. This language is as follows: "The statute in effect provides that the deduction shall be based on the amount actually available for charitable use, that is the amount of the fund remaining after the payment of all death taxes."

The decision of the Tax Court will be affirmed.