ESTATE OF WILLIAM JOHN AHLSTROM, DECEASED, KATRINA AHLSTROM MILLER, ADMINISTRATRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6182–66. Filed May 12, 1969.

*Roger L. Davis*, for the petitioner.
*Susan Stivers*, for the respondent.

---

[11] See *Walter J. Roob*, 50 T.C. 891 (1968).

224

OPINION

Section 2056 of the Internal Revenue Code of 1954 [2] permits a deduction from the gross estate commonly known as the marital deduction.

[2] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his

Section 2056(a) provides that the deduction shall be an amount equal to the value of property which "passes or has passed" from the decedent to his surviving spouse. The "passing" requirement is defined by example in section 2056(e). In order to meet the statutory requirement and thus qualify property as a marital deduction, the interest in property must fall within one of the enumerated categories.

Petitioner contends that the estate should receive a larger marital deduction than determined by respondent because one-third of the corpus of trust No. 1 passed to the surviving spouse pursuant to her dower election. Respondent, on the other hand, argues that it did not and that an untimely dower election is without significance for Federal tax purposes. He concludes that no portion of the corpus of trust No. 1 passed to the surviving spouse within the meaning of section 2056(e).

Florida Statutes, hereinafter set forth, provide that a widow who is not satisfied with her husband's will may elect dower instead within 9 months after publication of the first notice to creditors. The County Judge's Court permitted the widow to exercise her dower election even though the 9-month period for the election had long since elapsed. The Circuit Court approved the election in subsequent proceedings and instructed the trustee of trust No. 2 to fund trust No. 3, previously created by Marie as outlined, with assets of the testamentary trust.

The Commissioner argues that the grant of dower was not in accordance with Florida law, and therefore not binding upon this Court, citing *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967). Since whatever Marie received, if anything, cannot properly be labeled dower, he reasons that no interest "passed" to the surviving spouse which can qualify the estate for the larger marital deduction.

If we were bound to accept the label of dower which the interested parties and the Florida court placed upon the interest allegedly received by the surviving spouse as binding upon our adjudication, we

surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

\* \* \* \* \* \* \*

(e) DEFINITION.—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

(1) such interest is bequeathed or devised to such person by the decedent;

(2) such interest is inherited by such person from the decedent;

(3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent;

(4) such interest has been transferred to such person by the decedent at any time;

(5) such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship;

(6) the decedent had a power (either alone or in conjunction with any person) to appoint such interest and if he appoints or has appointed such interest to such person, or if such person takes such interest in default on the release or nonexercise of such power; or

(7) such interest consists of proceeds of insurance on the life of the decedent receivable by such person.

might be compelled to hold that the interest that Marie elected was dower which passed to the surviving spouse. Petitioner urges that we recognize the Florida probate and Circuit Court orders as valid and as determining the Florida law. She argues that even if what Marie obtained from the estate was not dower it was property that passed to the surviving spouse so as to qualify for the marital deduction.

In *Commissioner* v. *Estate of Bosch, supra*, the Supreme Court, after explaining the reasons for granting certiorari, began its opinion with the following statement:

We hold that where the federal estate tax liability turns upon the character of a property interest held and transferred by the decedent under state law, federal authorities are not bound by the determination made of such property interest by a state trial court.

*Bosch* also stands for the principle that the marital deduction statute should be strictly construed and applied. The Court said:

We find that the report of the Senate Finance Committee recommending enactment of the marital deduction used very guarded language in referring to the very question involved here. It said that "proper regard," not finality, "should be given to interpretations of the will" by state courts and then only when entered by a court "in a bona fide adversary proceeding." S. Rep. No. 1013, Pt. 2, 80th Cong., 2d Sess., 4. We cannot say that the authors of this directive intended that the decrees of state trial courts were to be conclusive and binding on the computation of the federal estate tax as levied by the Congress. If the Congress had intended state trial court determinations to have that effect on the federal actions, it certainly would have said so—which it did not do. On the contrary, we believe it intended the marital deduction to be strictly construed and applied. Not only did it indicate that only "proper regard" was to be accorded state decrees but it placed specific limitations on the allowance of the deduction as set out in § 2056 (b), (c), and (d). These restrictive limitations clearly indicate the great care that Congress exercised in the drawing of the Act and indicate also a definite concern with the elimination of loopholes and escape hatches that might jeopardize the federal revenue.

Here we have two orders of State trial courts but no opinion from Florida's highest court to follow. We have therefore, as suggested by *Bosch*, embarked upon an independent investigation of State law, so as to be able to follow the existing Florida Supreme Court interpretation, if there is one, and if not, to make our own interpretation of the applicable Florida law. *Estate of Frank Pangas*, 52 T.C. 99 (1969); *Schmidt* v. *United States*, 279 F. Supp. 811 (D. Kans. 1968); *Underwood* v. *United States*, 270 F. Supp. 389 (E.D. Tenn. 1967), revd. 407 F. 2d 608 (C.A. 6, 1969).

Section 731.34 of the Florida Statutes Annotated [3] provides for a right in the widow to elect dower rather than take under the will.

[3] 731.34 Dower in realty and personalty
Whenever the widow of any decedent shall not be satisfied with the portion of the estate of her husband to which she is entitled under the law of descent and distribution or under the will of her husband, or both, she may elect in the manner provided by law to take

Section 731.35 of the Florida Statutes Annotated [4] requires, however, that the election must be exercised within 9 months after the first publication of the notice to creditors. In the present case, the first notice to creditors was published on October 3, 1962, but the dower election was not executed until June 20, 1966, or filed until July 8, 1966. There is no evidence before us to the effect that the county judge extended the time in which creditors might file claims or that litigation occurred involving admission of Ahlstrom's will to probate or its validity or construction so as to extend the time for the widow's election under section 731.35(2) of the Florida Statutes Annotated. It appears from the evidence before us that under these clear statutory provisions no valid election to take dower was made, and that therefore no dower interest passed to Marie in 1966 unless we are bound to follow the Florida trial court decrees or the Florida case law dictates a contrary result.

Under purely equitable doctrines, if unmodified by statute, there is no limit in point of time to a right to elect dower, unless injury to third persons would result from the delay. In many States, however, including Florida, such purely equitable doctrines have been modified by statutes which prescribe certain periods of time within which the right of election to take dower, or an award in lieu thereof, rather than under the will, must be exercised. In general, courts have refused to honor an election filed after the statutory period has expired, and if an election to take dower is not timely filed, the widow is conclusively presumed to have elected to take under the will, no matter how harsh the result might be.

Although dower existed at common law, it has been created by statute in Florida so that the widow may elect to take a fee simple interest in one-third of all real property owned during coverture, and one-third of all personal property owned at death. Fla. Stat. Ann. sec.

dower, which dower shall be one third in fee simple of the real property which was owned by her husband at the time of his death or which he had before conveyed, whereof she had not relinquished her right of dower as provided by law, and one third part absolutely of the personal property owned by her husband at the time of his death, * * *

[4] 731.35  Election to take dower

(1) In order to take dower, a widow must so elect by an instrument in writing, signed by her and acknowledged or sworn to by her before any officer authorized to take acknowledgments or to administer oaths, and filed, within nine months after the first publication of the notice to creditors, in the office of the county judge in whose court the estate of the deceased husband is being administered. The county judge shall record all elections to take dower.

(2) Should the county judge extend the time in which creditors may file their claims, or should litigation occur involving the admission of the will to probate, or its validity or the construction thereof, or should any claim filed be contested, a widow shall have sixty days from the date to which such extension for filing claims is extended or from the date of a final judgment determining any litigation or contested claim or from the time allowed to the personal representative for filing his objection to any claim, in which to elect to take dower. [This section was amended, Fla. Laws 1965, ch. 65-542, sec. 1, effective Aug. 3, 1965. This amendment is not effective or applicable here. In re Rogers Estate, 171 So. 2d 428 (Fla. App., 1965).]

731.34. The widow must exercise her election to take dower within 9 months after the first publication of the notice to creditors. Fla. Stat. Ann. sec. 731.35(1). The statute in force when William John Ahlstrom died provided for an extension of 60 days should certain specified events occur; however, since none of the events specifically set forth in the statute is present in this case, no such extension took place. Fla. Stat. Ann. sec. 731.35(2).

The right referred to in Florida as dower and the manner of taking it spring wholly from the statutory law. *Hill* v. *Morris*, 85 So. 2d 847 (Fla. 1956). Because the interest is dependent for its origin upon statute and not common law, dower cannot come into being unless the widow complies with the statute. *In re Aron's Estate*, 118 So. 2d 546 (Fla. App. 1960). Where the widow fails to comply with the statute her right to dower is barred, and she cannot thereafter assert that right. *In re Rogers' Estate*, 171 So. 2d 428 (Fla. App. 1965); *In re Aron's Estate, supra.* The Supreme Court of Florida held in *Exchange National Bank of Winter Haven* v. *Smith*, 148 Fla. 473, 4 So. 2d 675 (1941), that when a widow remains inactive during the statutory period for election of dower, she has in effect bound herself to take under the will.

The facts in *Williams* v. *Williams*, 114 Fla. 733, 154 So. 835 (1935), bear noticeable resemblance to those in the present case. There the widow failed to elect dower because she had not been apprised by her attorney that a dower election would be to her economic advantage. She further alleged that her attorney had intentionally deprived her of sufficient knowledge to make an intelligent election because he was involved in a conspiracy to defraud her. The Supreme Court of Florida refused to recognize her untimely election to take dower, holding that a failure to elect dower within the statutory period specified resulted in an election to take under the will. Once made, the court held that it could not be abandoned. The court refused to give effect to the widow's allegation of fraud, but noted that she could sue her attorney in tort if she desired to do so.

Petitioner contends that even if the Florida Statutes would prevent the court from recognizing the efficacy of the dower election under normal circumstances, the set of events presently under our glass merits an exception to the statute based upon constructive fraud. The widow relied heavily upon her daughter, the petitioner herein, for counsel and advice and was not advised within the 9-month period that a dower election would abound to her economic advantage; thus, petitioner argues, she was the victim of a constructive fraud, which should permit us to ignore the statutory period of limitations. Although the above contention is emotionally appealing, if we were to

accept the alleged facts as established, we find it neither convincing nor compelling. Even if we somehow were able to discover the existence of constructive fraud, the Supreme Court of Florida in *Williams* v. *Williams, supra,* refused to permit an exception to the period during which dower must be elected in the face of a similar allegation. We do not pass upon the merits of any action Marie might have had against Katrina for fraud. On all of the facts in this record we conclude that the Florida Supreme Court would uphold a ruling that Marie's election was untimely and that having elected to take under decedent's will, and having taken the other actions disclosed, Marie was barred from dower under Florida law on July 8, 1966.

We have given due regard to the Florida trial court orders and in applying the State law as Bosch teaches have carefully considered the nature of the proceedings out of which those decrees arose. An analysis of the entire situation and the nature of the lower court litigation and all transactions is pertinent to ascertain what the Florida law would be here. It is clear that by plan and prearrangement Marie and Katrina reshuffled their respective interests so that simultaneously with Marie's belated election of dower, unopposed by Katrina either individually or as administratrix of the estate, they were right back where they started from with respect to what each one would receive from the decedent's estate. They entered into a written contract on July 8, 1966, to this effect and at the same time executed various other documents to accomplish it. This was on the very day that Marie filed her election of dower which was granted by the Probate Court. By Marie's execution of a new trust agreement, with the same bank as trustee, Katrina was given the income from one-third of the decedent's interest in trust No. 1, the White Trust, during Marie's lifetime; Marie in turn was assigned Katrina's income interest in the two-thirds of that trust corpus now reposing in trust No. 2, the testamentary trust, for her lifetime. The remainder interests were unchanged; upon Marie's death the corpus in both trusts passed to Katrina outright, or to her issue, including adopted children, if she predeceased Marie. All terms of the original testamentary trust which Marie allegedly rejected in order to elect dower were thus immediately and simultaneously recreated and effected.

In substance and in result the situation was maintained just as if no election of dower had ever been made. This was obviously by prearrangement and agreement of mother and daughter for the sole purpose of creating the marital deduction which is the subject matter of this litigation. The transaction took the label and form of an election of dower and renunciation of decedent's will, but it obviously was without reality or substance, an interfamily transaction entered into

for no other motive but to escape estate taxes. We conclude that it was a simulated transaction dubbed the election of dower but lacking any reality aside from the form in which it was cast. It did nothing to give Marie a greater or increased share in her husband's estate or to undo the alleged "constructive fraud" of Katrina. This did not appear to be known to the Probate Court or within the consideration of the Circuit Court which spoke only in terms of equitable adjustment and of giving Marie an increased share of her husband's estate.

We are convinced that the Florida Supreme Court, viewing all of these facts and circumstances would not uphold the election and award of dower because of "constructive fraud" practiced by Katrina upon Marie. The alleged fraud practiced by daughter upon mother was obviously more imaginary than real, and we do not believe the Florida Supreme Court would uphold the lower court orders if the litigation had been adversary and taken up on appeal. Furthermore, in the trustee's petition for instruction proceedings the Circuit Court applied the 1965 amendment to section 731.35(2), Fla. Stat. Ann., which is clearly improper under the law of Florida, as announced in *In re Rogers' Estate, supra.* It also ignored completely the fact that the decedent's interest in trust No. 1 had been included in the final amended inventory of estate assets in February of 1964 and that Marie admittedly knew of her right to claim dower therein at least as early as June of 1965. She waited for more than 1 year thereafter to assert her dower claim.

In the light of all of these facts and considerations and based upon our examination of the Florida authorities and particularly on the opinions in *In re Rogers' Estate, supra,* and *Williams* v. *Williams, supra,* interpreting sections 731.35(1) and 731.35(2), Fla. Stat. Ann., and applying their terms, it appears that Marie Ahlstrom, decedent's widow, elected to take under decedent's will. She was clearly precluded from subsequently electing dower both when she executed the election on June 20, 1966, and when she filed that election on July 8, 1966, long after July 3, 1963, the date on which the 9-month period specified by section 731.35(1), Fla. Stat. Ann., ended. Applying the Florida law as we have determined it in accordance with the doctrine of *Commissioner* v. *Estate of Bosch, supra,* we conclude and hold that the Probate Court order awarding Marie Ahlstrom dower in July of 1966 and the subsequent Circuit Court opinion approving that award and instructing the trustee were contrary to the Florida law and in no way binding upon respondent or upon us in determining the Federal estate tax liability of petitioner. Having made our own analysis, interpretation, and determination of the Florida law, we conclude that respondent

correctly refused to allow the purported dower claimed as a marital deduction. *Schmidt* v. *United States, supra.*

We have carefully considered petitioner's other argument that if dower is not recognized we must nonetheless allow a marital deduction for whatever it was that was awarded to Marie by the Florida courts. We reject this argument as well. Sec. 2056(e).

We hold that petitioner has failed to prove that the widow received an interest in property which passed from the decedent to the surviving spouse as required by section 2056, I.R.C. 1954, greater than respondent has allowed. The estate does not qualify for any additional marital deduction and respondent's determination is sustained. To reflect any required or necessary adjustments,

*Decision will be entered under Rule 50.*